IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRITTANY L. S.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:25CV554 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Brittany L. S. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on February 17, 2016, alleging a disability onset date of October 30, 2015 in both applications. (Tr. at 221, 563-66.)[1] Her applications were denied initially (Tr. at 178-195, 269-77) and upon reconsideration (Tr. at

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #2].

196-217, 283-300). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 301-02.) On April 3, 2018, Plaintiff, along with her attorney, attended the subsequent hearing with an ALJ, at which Plaintiff and an impartial vocational expert testified. (Tr. at 221, 142-77.) In a decision dated May 19, 2019, a different ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 229.) However, a year later, on May 14, 2020, the Appeals Council issued an Order remanding Plaintiff's case for a new hearing. (Tr. at 235.) Accordingly, Plaintiff's second administrative hearing took place by telephone on February 5, 2021, before yet another ALJ. (Tr. at 242.) Plaintiff was again represented by counsel, and both Plaintiff and an impartial expert again testified. (Tr. at 242, 109-141.) Following this hearing, in a decision dated September 8, 2021, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. at 254.) Plaintiff again sought review by the Appeals Council, who remanded Plaintiff's claims for a third hearing. (Tr. at 261-268.) This hearing, which took place via online video, occurred on June 29, 2023, before the ALJ who conducted Plaintiff's second hearing, and again involved Plaintiff, her attorney, and an impartial vocational expert. (Tr. at 40, 69-108.) The ALJ issued the unfavorable decision now at issue on October 10, 2023 (Tr. at 59), and on April 28, 2025, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

(4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (citation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since October 30, 2015, her alleged onset date.[4] The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 43.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Diverticulosis; Cholelithiasis; Chronic Gastritis; rupture of anterior cruciate ligament of the left knee; morbid obesity; derangement of the left knee; single kidney; loin pain hematuria syndrome; anterior cruciate ligament rupture (ACL); status-post left knee arthroscopy; status-post medial meniscal repair; status-post lateral meniscal repair; status-post reconstruction of anterior cruciate ligament; internal derangement of knee; ulnar neuropathy; migraine headaches; and chronic kidney disease[.]

(Tr. at 43.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 47-49.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work, but with the following, non-exertional limitations:

> [Plaintiff] can sit for up to six hours and stand/walk up to two hours. She is able to frequently reach, handle, finger[,] and feel bilaterally. She can occasionally use ramps and stairs, balance, stoop, kneel, and crouch. This individual requires a hand-held assistive device, a cane, for ambulation. She can have no exposure to unprotected heights, dangerous machinery[,] or ladders, ropes, or scaffolds. This individual should have no exposure to extremes of heat or cold and no exposure to loud noise levels. [She can undertake f]requent use of hand controls and occasional use of foot controls. In addition to normal breaks, this individual would be off task for five percent of the time.

[4] Notably, Plaintiff's was last insured for purposes of DIB on March 31, 2019. Thus, the relevant period for her DIB claim extends from October 30, 2015 to March 31, 2019. In contrast, the period at issue for purposes of SSI runs from the date of her Application, February 17, 2016, through the date of the ALJ's decision, October 13, 2023.

(Tr. at 49.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 58.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 58-59.)

Plaintiff now challenges the ALJ's decision in multiple respects. Plaintiff first contends that the ALJ erred by (1) finding Plaintiff's depression and anxiety to be non-severe impairments as step two of the sequential analysis and by (2) failing to later discuss the impact of these impairments on Plaintiff's RFC. (Pl.'s Br. [Doc. #7] at 4-13.) She also argues that the ALJ improperly discounted the severity of Plaintiff's pain, particularly pain associated with Plaintiff's loin pain hematuria syndrome, which the ALJ included among Plaintiff's severe impairments. (Pl.'s Br. at 13-14, 16-21.) Finally, Plaintiff contends that the ALJ failed to properly evaluate the medical opinion issued by Dr. John Hubbard, Plaintiff's treating orthopedist. (Pl.'s Br. at 14-16.) After a thorough review of the record, the Court finds that substantial evidence fails to support the ALJ's decision regarding Plaintiff's mental impairments and her loin pain hematuria syndrome.

A. Depression and anxiety

Plaintiff first contends that the ALJ erred in failing to include depression and anxiety among her severe impairments at step two or consider the effects of these impairments at later steps of the sequential analysis. (Pl.'s Br. at 4-13.) At step two, a plaintiff must establish a "severe impairment," that is, an impairment or combination of impairments that significantly

limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not significantly limit [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

Notably, failure to include a severe impairment at step two does not automatically necessitate remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted); see also Blevins v. Colvin, No. 5:15-cv-14240, 2016 WL 6987169, at *9 (S.D. W. Va. Sept. 16, 2016) (collecting cases). However, in the present case, Plaintiff contends that the ALJ's subsequent analysis also failed to account for the effects of her mental impairments on her ability to work.

As Plaintiff correctly notes, when evaluating mental impairments, an ALJ must employ the special technique described in 20 C.F.R. § 404.1520a to rate the degree of functional limitation resulting from the impairment(s). See 20 C.F.R. § 404.1520a(b)(2). A five-point scale (none, mild, moderate, marked, and extreme) is used to rate the degree of functional limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and

(4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3)-(4). A rating of moderate or greater limitation in at least one of these areas indicates that a mental impairment significantly impacts a claimant's ability to work, or in other words, that the impairment is "severe." In the present case, the ALJ found that Plaintiff had no more than mild limitations in any of paragraph B functional areas, and he therefore found Plaintiff's anxiety and depression to be non-severe. (Tr. at 45-47.)

However, the prior decision by the same ALJ, dated September 8, 2021, included both "Depressive Disorder" and "Anxiety Disorder" as severe impairments at step two. (Tr. at 245.) In making this finding, the ALJ determined that Plaintiff had moderate limitations in all four functional areas. (Tr. at 247-48.) The ALJ then proceeded to incorporate mental limitations in Plaintiff's RFC assessment. Specifically, he determined that Plaintiff was "limited to simple, routine tasks and simple work-related decisions not at a production pace." (Tr. at 248.) He also found that Plaintiff could "tolerate frequent contact with supervisors and coworkers but no contact with the public and can adapt to occasional changes in the workplace setting." (Tr. at 248.)

As an initial matter, the Court notes that, because the 2021 decision was remanded by the Appeals Council, this is not an instance in which the ALJ at the subsequent hearing was required, under Albright, to consider a prior, final decision by the Commissioner.[5] However, both the substance of the ALJ's prior decision and the basis for the Appeals Council remand

---

[5] Under Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999) and Acquiescence Ruling ("AR") 00-1(4), adjudicators in subsequent disability claims must consider any prior, final administrative findings as evidence "and give them 'appropriate weight,' considering such factors as the effects of the passage of time on the continuing applicability of the findings and the extent that evidence not previously considered provides a basis for making a different findings in the subsequent claim."

are potentially relevant, as the two decisions cover the same time period and evidence. Most notably, in issuing its Remand Order, the Appeals Council found that with regard to Plaintiff's mental impairments, the ALJ should further assess Plaintiff's mental limitations to determine if the met or equaled a Listing, and should expressly discuss which findings in the record support limitations and restrictions attributable to Plaintiff's mental impairments. (Tr. at 264-65.) The Appeals Council instructed the ALJ on remand to "[f]urther evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c)." (Tr. at 265.) The Council further instructed the ALJ to "obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments" and "evaluate the medical source opinions . . . from state agency medical and psychological consultants and other program physicians and psychologists in accordance with [the regulations]. (Tr. at 265.)

Rather than including additional, supporting evidence to support the "moderate" findings included in his 2021 decision, or otherwise explaining which findings supported which restrictions as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the ALJ on remand instead reduced his "paragraph B" findings from moderate to mild, thereby bypassing both the Council's directives and the need for greater explanation at subsequent steps of the sequential analysis. (See Tr. at 45-47.) In doing so, the ALJ summarily dismissed or minimized evidence of severe and limiting mental impairments, including two psychiatric inpatient admissions during the time period at issue as well as ongoing mental counseling and a plethora

of medications for treatment of anxiety and depression spanning the entire seven years at issue here.

Although the ALJ acknowledged that Plaintiff "required [a] brief psychiatric hospitalization in 2020," he discounted this incident as "a direct result of accidental overdose on medication that she believed would help her pain levels, and she convincingly denied that this was an attempt at self-harm." (Tr. at 46.) However, records reflect that Plaintiff was having "auditory hallucinations", and she took 60 Mucinex-DM because "she did not want to be in any pain." (Tr. at 1730.) She was noted to have a history of depression and anxiety and was assessed with a "depressed affect" and "poor insight," and was diagnosed with "Major Depressive, recurrent episode, severe with psychotic features." (Tr. at 1822.) She was admitted to inpatient behavioral health, and the treatment team recommended keeping her longer to try to get to "better mood stability" but Plaintiff wanted to "go home and be with her husband and children." (Tr. at 1733, 1807.) Notably, a month later, in late February 2020, Plaintiff required an additional six-day psychiatric admission, after she "presented to the emergency department hysterically crying, tearful, and anxious stating that she has an abusive husband who has been trying to poison her" by "forc[ing] her to take Musinex DM and OxyContin pills." (Tr. at 1744.) Crucially, the ALJ failed to address this second psychiatric admission at all in his more recent decision.

A few months later, in June 2020, Plaintiff again reported that she was "on the verge of another manic episode" with "agitation, behavioral problems, decreased concentration." (Tr. at 1883, 1887.) The later record reflects ongoing mental health treatment for anxiety and depression in 2021, 2022, and 2023, including daily medication of 40mg Prozac and 10mg

Zyprexa (used to treat schizophrenia and bipolar I disorder) after having "failed effexor and cymbalta." (Tr. at 2107, 2292, 2301, 2396, 2404, 2481.)

Most notably, the record contains no medical opinion evidence relating to Plaintiff's mental impairments, in the form of State agency psychological assessments, consultative examinations, treating provider opinions, or otherwise. The only medical review was a state agency physician in 2016 (Tr. at 194-206), but no assessment of Plaintiff's mental impairments was made because they developed later, and no consultative examination or subsequent medical review or assessment was obtained. Thus, the ALJ's conclusion that Plaintiff's anxiety and depression caused no more than mild limitations—and therefore had no discernable effect on her ability to work—is based on little more than his lay interpretation of the treatment record, with no medical review or opinion. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529, 416.929 and remanding where the lack of medical support for the ALJ's conclusions "amount[ed] to the ALJ improperly 'playing doctor.'" (citation omitted)); Shaw v. Berryhill, No. 1:17CV91, 2018 WL 1322159, at *8 (M.D.N.C. Mar. 14, 2018) (remanding where "[t]he ALJ did not enlist the assistance of a medical expert to review the more recent evidence or provide an opinion regarding the extent of Plaintiff's mental impairments for the later period, and as a result, no medical professional has reviewed the records or provided an opinion for the time period.").

An ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (citation omitted). Development of the record may include ordering a consultative

examination, and the regulations address the circumstances under which an ALJ may order such an examination, including where "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). See also Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980) (holding that remand is warranted for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant"); Oakes v. Kijazaki, 70 F.4th 207, 213 (4th Cir. 2023) (noting that where the evidence in the record is incomplete or insufficient, the ALJ may obtain additional evidence as necessary, including obtaining a medical opinion or a consultative examination). By failing to procure opinion evidence or any type of consultative examination or medical expert review regarding Plaintiff's mental impairments, the ALJ ignored the Appeals Council's directives and failed to develop the medical evidence to support his determination. (Tr. at 265.) Because the ALJ obtained no such supplementary opinion evidence and instead minimized or ignored the evidence before him when assessing Plaintiff's mental impairments, remand is required.

B. Loin pain hematuria syndrome

Plaintiff also contends that the ALJ failed to properly consider pain arising from her loin pain hematuria syndrome. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p,

2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements, including pain:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95–96. Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work[.]" Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," id., as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

> (i) [Plaintiff's] daily activities;
> (ii) The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as recounted in the ALJ's decision,

> [Plaintiff] testified that she experience[d] chronic kidney and flank pain throughout the period at issue. As a result, she complained that this makes it difficult to perform most of her daily functions including sitting, standing, or caring for her children. She estimated she could sit for up to 15 minutes at a time. However, she testified that she is able to drive for 30 minutes. She also estimated that she is able to walk for 10 minutes. She reported that she often feels ill and experiences fevers, chills, or generalized body aches as a result to decreased kidney function. [Plaintiff] described that she experiences extreme kidney pain ranging from a chronic dull ache to times where she is on the floor screaming. She reported that she spends two hours lying in bed during the day.

(Tr. at 49-50.) Ultimately, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 50.) Nevertheless, the ALJ found, that "it is reasonable and logical to provide [five percent time off task] due to the distracting impact of pain on [Plaintiff's ability to] focus." (Tr. at 50.) The ALJ further limited Plaintiff to sedentary work with extensive postural and no environmental limitations, which he specifically linked to Plaintiff's "generalized discomfort, flank pain, and fatigue related to her kidney disorders." (Tr. at 57.)

In making these findings, the ALJ recounted Plaintiff's extensive history of flank pain with kidney swelling, episodes of kidney stones, hematuria, urinary tract infections, painful

urination, and voiding problems. (Tr. at 50, 51, 52, 54, 56, 57.) The ALJ further acknowledged that Plaintiff had had her right kidney surgically removed in 2010 as a result of the same condition. (Tr. at 50, 54.) In 2017, Plaintiff's urologist, Dr. Richard Natale, referred her to a new provider (Tr. at 52), noting that there were "limitations in what [he could] offer her" (Tr. at 1586). Plaintiff was thereafter treated at Wake Forest Baptist and Bethany Medical, where she was prescribed hydrocodone-acetaminophen for her kidney-related pain. (Tr. at 2103, 2228, 2282, 2290, 2298, 2307.)

Nevertheless, it appears that the ALJ largely discounted Plaintiff's claims of disabling flank pain based on generally "normal" exam findings. For example, the ALJ asserted that with respect to Plaintiff's kidney and flank pain,

> Brief visits in 2015 document complaints of left-sided flank pain with trace blood in the urine but do not otherwise document physical abnormalities such as decreased strength, gaiT, range of motion or gross motor function. . . . Visits throughout 2016 are similarly unremarkable, noting complaints of more significant kidney and flank pain during flares of renal colic. . . She continued with routine and conservative treatment for these impairments and all accompanying physical examinations remained fully normal in terms of strength, gait, range of motion function except for periodic suggestions of left-sided flank pain or tenderness. However, there were no signs of distension, guarding, or rebound to suggest greater abdominal distress.

(Tr. at 54; see also Tr. at 48.) The ALJ also noted that, in terms of activities of daily living, Plaintiff "admitted to performing childcare, operating electronic devices, and driving," which the ALJ found "generally inconsistent with the degree of functional limitation alleged." (Tr. at 56-57.)

However, this assessment neglects to consider the unpredictable, periodic nature of Plaintiff's potentially debilitating pain. It also fails to consider the location of Plaintiff's pain, which, due to the kidney's location on either side of the spine, would not necessarily cause

abdominal symptoms such as "distension, guarding, or rebound", or motor impacts such as "decreased strength, gait, range of motion or gross motor function" on examination. Because loin pain hematuria syndrome is a rare condition and poorly understood, Plaintiff's brief extensively quotes articles which describe her impairment, stressing that "unremarkable physical examinations are normal in cases of loin pain hematuria syndrome and conservative treatment with pain medication is the norm." (Pl.'s Br. at 21.) In remanding the ALJ's previous decision, the Appeals Council also appeared to recognize the difficulties involved in evaluating Plaintiff's condition. As set out above in relation to Plaintiff's mental impairments, the Council instructed the ALJ on remand to "obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments, the date of onset, and whether the claimant's impairments meet or equal the severity of [a listed] impairment[.]" (Tr. at 265.) The ALJ ultimately failed to follow this directive. Instead, the only medical opinion evidence considered in the ALJ's 2023 decision consists of the State agency medical consultant's assessment from 2016. (See Tr. at 56.) More than seven years elapsed between these assessments and the October 2023 decision, yet in the course of three hearings and two Appeals Council remands, no further information was sought in the form of updated State agency reviews, consultative examinations, medical expert opinions, or otherwise. The ALJ dismissed Plaintiff's complaints as inconsistent with the objective evidence, without any medical opinion or insight as to what symptoms or objective evidence would be expected in an individual with loin pain hematuria. Without any such medical review, there is no basis to determine whether the "normal" examinations cited by the ALJ are consistent or inconsistent with Plaintiff's loin pain hematuria and related symptoms.

Thus, remand is necessary so that sufficient review can be undertaken to provide substantial evidence to support the ALJ's determination.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g), and that Defendant's Dispositive Brief [Doc. #8] be DENIED, and Plaintiff's Dispositive Brief [Doc. #7] be GRANTED to the extent set out herein.

This, the 2nd day of September, 2026.

Joi Elizabeth Peake
United States Magistrate Judge

[6] The Court notes that before the Appeals Council, Plaintiff introduced evidence of several subsequent hospitalizations in 2023, including with pneumonia and acute kidney injury, requiring intubation and life support. (Tr. at 11, 24, 29.) Those records were not considered because they occurred after the date of the ALJ's decision, but all of the records can be further considered on remand.